## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Angel Del Valle, Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, hereinafter referred to as ATF being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since July 2019. I have a Puerto Rico Police Bureau Academy training. I was part of the precinct of Bayamon West from 2015 to 2016 and was then transferred to the security Unit of the Governor's House from 2017 to 2019.

2. I am familiar with the information contained in this Affidavit, which is based upon the investigation and information received from other law enforcement officials. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510 (7). Your affiant is therefore, an officer of the United States who is empowered by law to conduct investigations and to make arrest of the offenses enumerated in Title 18, United States Code, Section 2516. Your affiant is currently assigned to ATF San Juan conducting investigations of federal firearms violations and other federal violations.

3. Your affiant has assisted in conducting investigations into the unlawful possession of firearms. Through training, investigations and experience, I have taken part in cases relating to the trafficking of firearms, the use and possession of firearms by persons prohibited by law, and the possession of illegal firearms.

1

4. During my employment with the ATF, I have participated in weapons and narcotics investigations. These investigations involved the unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics (including cocaine, heroin, and crack cocaine, among other narcotics), the laundering of narcotics proceeds, and monetary instruments derived from narcotics activities, conspiracies associated with narcotic offenses. These investigations involved debriefing defendants, witnesses, informants, conducting surveillance, assisting in court ordered communications interceptions, and executing search warrants, included physical surveillance, execution of search and arrest warrants, handling of confidential sources. Through my training, experience and interaction, I have become familiar with the methods employed by narcotic traffickers in general, and large narcotics trafficking organization in particular, to smuggle, safeguard and distribute narcotics and to collect and launder narcotics related proceeds.

5. The information set forth herein is based on my personal knowledge, information obtained through interviews, information provided to me by other law enforcement officers and through other various forms of information. This affidavit is offered for the limited purpose of establishing probable cause, therefore, I have not recited every fact known to me as a result of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

6. On August 7, 2025, PRPB Agents Received information from a confidential informant, stating that on Building B of San Juan Bautista Public Housing Project (SJBPHP), in San Juan, on the second-floor apartment on the left, lived an individual named Felix Santos Ayala. The information provided a description of the individual. The information stated

2

that this individual took narcotics from a stash house located in what was referenced to as "a Chalet" next to the SJBPHP to resupply the narcotic sold on the drug point.

7.  On August 18, 2025, at approximately 5:46 am PRPB Agents conducted a surveillance on a street where they could observe the back part of the Chalet and building B of SJBPHP. At 6:10 am PRPB Agents observe an individual with a matching description to the description provided by the confidential informant (white, black hair and goatee, chubby, with tattoos on the arms, wearing black shorts an white t-shirt) exit Building B, and is approached by another individual, (white, skinny, black hair, black t-shirt and red shorts) both individuals walked and approached the stash house reference to as a Chalet and entered in it.

8.  PRPB Agents at approximately 6:39am observed the individuals exit the Chalet, they observed the individual wearing a black t-shirt with a black bag on his right hand, and both individuals start walking.

9.  PRPB Agents observe the individual wearing a black t-shirt put his left hand in the black bag and took out a clear bag containing vials with red caps containing white powder inside (based on their experience), and placed it inside a bucket and took out from the same bucket a bag containing baggies with green substance inside (marijuana based on their experience) and stored it back into the bucket and placed lid on the bucket. After this, both individuals were seen leaving in different directions. PRPB Agent observed the individual with a white t-shirt fixing his t-shirt and they were able to observe the grip of a black firearm.

10. On August 19, 2025, at approximately 5:35 am PRPB conducted another surveillance, and approximately at 6:24 am observed the same Chubby individual from the day before

3

entered the Chalet and exit with a white supermarket bag on his left hand and walked in the direction of building C of SJBPHP. PRPB Agent observed a white individual wearing blue jeans and white t-shirt approached the chubby individual. Both individuals entered the stairway of building C of SJBPHP.

11. PRPB Agents observed the individual holding the white bag  open it and take a bag containing a green substance and placed on his left pocket, then  took out a various bags containing vials with white powder inside, showed the open bag to the white individual then place back inside the  bags containing the vials and handed the bag to the white individual and walked away.

12. On August 21, 2025, at approximately 6:28 am PRPB Agents arrived to the Chalet to execute a search warrant, PRPB Agents knock and announced themselves they entered the structure after some resistance from the individuals inside.

13. PRPB Agents encountered two individuals inside the Chalet one with a black t-shirt and the other with a white -t-shirt.

14. PRPB Agents observe inside plain view a white table with baggies of marijuana and vials of crack.

15. PRPB Agents placed under arrest the individuals  and read them their rights.

16. PRPB Agents seized the following items from inside the Chalet:

- Four thousand one hundred ninety-seven (4,197) vials with bronze caps of crack cocaine

- One hundred and seventy-five (175) vials with green caps of crack cocaine.

- One hundred and eight (108) baggies of marijuana

- Thirty-three (33) medium bags of marijuana.

4

- Five (5) large bags of marijuana.

- Four hundred and fifty (450) baggies of cocaine.

- One hundred and fifty-nine (159) pills

- One (1) black Glock, model 19 Gen 5, 9mm, S/N: BRAA148, loaded.

- One (1) black One (1) Glock, model 22 Gen 5, .40 cal., S/N: BSRD287, loaded.

- One (1) black Glock, model 17 Gen 5, 9mm, S/N: BGYF188, loaded.

- One (1) coyote Glock, model 19x , 9mm , S/N: BWZW763, loaded.

- Two hundred and four (238) rounds of 9mm ammunition

- Fifty-tree (53) rounds of .40 cal. ammunition

- Four (4) Glock .40 cal. Magazines.

- Ten (10) Glock 9mm magazines.

- One (1) 9mm drum magazine.

- One (1) black sealer machine

- One (1) white sealer machine

- One (1) gray currency counter machine

- Drug Paraphernalia





17. The two individuals found on the Chalet and placed under arrest were later identified as Jose SANCHEZ-SANABRIA and Joshua CAMPOS.

18. ATF Agents interviewed CAMPOS and after reading him the Miranda warnings CAMPOS waived his right to remain silent and spoke to ATF Agents and told them that all the seized evidence, to include the controlled substances and firearms, were his. CAMPOS also stated that he was on federal supervised release.

19. The investigation further revealed that the firearms as well as the ammunition seized are not manufactured in the commonwealth of Puerto Rico and that therefore, the firearms and ammunition were shipped or transported in interstate or foreign commerce.

20. Based on my training, knowledge, experience and investigation, the controlled substances seized were meant for distribution and the seized firearms were possessed in furtherance of drug trafficking.

21. The investigation further revealed that CAMPOS had been charged and incarcerated for 96 months and was under federal supervised release until 3/19/2032.

## CONCLUSION

22. Based on my training and experience and the facts set forth above in this affidavit, there is

probable cause to charge [1]Jose SANCHEZ SANABRIA with violations of Title 18 U.S.C

841(a)(1)(b)(1)(C) (Possession with intent to distribute a controlled substance and

[2]Joshua CAMPOS with violation to Title 18 U.S.C 841(a)(1)(b)(1)(C) (Possession with

intent to distribute a controlled substance)  and Title 21 U.S.C 924(c) use or carrying of a

firearm in furtherance to a drug trafficking crime.


_____

Angel Del Valle Figueroa
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone in San Juan,

Puerto Rico on August ___22___, 2025. at 4:29 p.m.


_____

Héctor Ramos-Vega
United States Magistrate Judge
District of Puerto Rico